

FILED

5:13 pm, 6/2/23

**Margaret Botkins
Clerk of Court**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

NADIA ZAHMOUL,

       Plaintiff,

   v.

NBH BANK, d/b/a BANK OF JACKSON
HOLE, and KARIM ZAHMOUL,

       Defendants.

Case No.  22-CV-221-ABJ

---

**ORDER GRANTING DEFENDANT NBH BANK'S *MOTION TO DISMISS* (ECF NO. 67) and DISMISSING, WITH PREJUDICE, PLAINTIFF'S CLAIMS AGAINST DEFENDANT NBH BANK IN HER *SECOND AMENDED COMPLAINT* (ECF NO. 62)**

---

THIS MATTER comes before the Court on Defendant's, NBH Bank, d/b/a Bank of Jackson Hole ("Defendant"), *Motion to Dismiss*, filed on March 24, 2023. ECF No. 67.

Having considered the written submissions, the applicable law, and being otherwise fully advised, the Court **GRANTS** Defendant's *Motion to Dismiss* (ECF No. 67) and **DISMISSES, WITH PREJUDICE,** Plaintiff's, Nadia Zahmoul ("Plaintiff"), claims against Defendant within her *Second Amended Complaint* ("*Complaint*") (ECF No. 62).

## BACKGROUND

In seven months, this case has run the gamut – from myriad preliminary injunction, stay, and dismissal motions to amended complaints, mediation, and

1

international service of process headaches. Today, the Court finally addresses the crux of Plaintiff's claims against her bank. I find a rote case of contract interpretation. It is the tripartite contract – controlling as to unilateral withdrawals, modifications in writing, and attorney-fee liability – that Plaintiff cannot elude. I find that Plaintiff's five claims against Defendant fail and warrant dismissal with prejudice. The Court outlines the case's posture, its standard of review, the parties' arguments, and its disposition in the pages that follow.

For the last three-and-a-half years, Plaintiff and Defendant, Karim Zahmoul ("Mr. Zahmoul"), have been engaged in divorce proceedings in the United Kingdom.[1] ECF No. 62, ¶ 6. Together, the Zahmouls own two properties in Teton Village, Wyoming via three limited liability companies, of which they are the sole members, including: (1) 3093AH LLC, which is jointly owned by Plaintiff and Mr. Zahmoul; (2) 3100AH-A LLC, which is owned by Mr. Zahmoul; and (3) 3100AH-B LLC, which is owned by Plaintiff. *Id.*, ¶ 1. Defendant is a Colorado corporation with a branch office in Jackson, Wyoming. *Id.*, ¶ 2. The Zahmouls' properties are subject to a mortgage with Defendant, owed by the three LLCs. *Id.* The Zahmouls also have two joint checking accounts with Defendant, designated for the properties' rental revenue and management and maintenance expenses. *Id.* The "Terms and Conditions" of the Zahmouls' joint accounts, in pertinent part, state:

> (2) Agreement, Continued
>> We [*i.e.,* Defendant] may permit some variations from our standard agreement, but we must agree to any variation *in writing either on*

---

[1] The facts in this section originate from Plaintiff's *Complaint* and are accepted as true for the purpose of resolving the motion at bar. *See* ECF No. 62; *see also* ECF Nos. 1-1, at 3–12; 51-1, at 12–23; 68, at 2–4; 71, at 2.

*the signature card for your* [*i.e.,* Plaintiff and Mr. Zahmoul's] *account or in some other document.*

*(3) Liability*

You [*i.e.,* Plaintiff or Mr. Zahmoul] will be liable for our costs as well as for our reasonable attorneys' fees, to the extent permitted by law, whether incurred as a result of collection or *in any other dispute involving your account*. This includes, but is not limited to, *disputes between you and another joint owner*; you and an authorized signer or similar party; or a third party claiming an interest in your account. This also includes any action that you or a third party takes regarding the account that causes us, in good faith, to seek the advice of an attorney, whether or not we become involved in the dispute. All costs and attorneys' fees can be deducted from your account when they are incurred, without notice to you.

. . .

*(5) Withdrawals*

**Generally**. Unless clearly indicated otherwise on the account records, *any of you* [*i.e.,* Plaintiff or Mr. Zahmoul]*, acting alone*, who signs to open the account or *has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time*. Each of you (until we receive written notice to the contrary) authorizes each other person who signs or has authority to make withdrawals to indorse any item payable to you or your order for deposit to this account or any other transaction with us.

. . .

*(37) Resolving Account Disputes*

We [*i.e.,* Defendant] may place an *administrative hold on the funds in your account* (refuse payment or withdrawal of the funds) if it becomes subject to a claim adverse to (1) your own interest; (2) others claiming an interest as survivors or beneficiaries of your account; or (3) *a claim arising by operation of law*. The hold may be placed for such period of time as we believe reasonably necessary to *allow a legal proceeding to determine the merits of the claim* or *until we receive evidence satisfactory to us that the dispute has been resolved*. We will not be liable for any items that are dishonored as a consequence of placing a hold on funds in your account for these reasons.

ECF Nos. 51-1, at 13, 14, 23 (emphasis added); *id.*, ¶ 22.

3

Concerned that her husband was "schem[ing]" to secrete assets from the marital estate, Plaintiff kept Defendant informed of the status of her divorce proceedings overseas. *Id.*, ¶¶ 7–9, 34. In August 2021, Plaintiff provided Defendant with an April 7, 2021 *Order* from the Family Court at Bristol in the United Kingdom ("the UK Order"), which, *inter alia*, stated:

> 12. Both parties agree and undertake:
>> a. To refrain from taking steps to diminish the balance of the funds held in all the parties' accounts held with [Defendant] with account numbers [] and [], as well as the accounts held with [Defendant] by the parties' companies, 3100AH-A LLC, 3100AH-B LLC and 3093AH LLC without the other party's consent in writing *save for the purposes of*:
>>> i. *Meeting mortgage payments in respect of the mortgage secured over* [the two properties in Teton Village, Wyoming]; and
>>> ii. Meeting necessary costs referable to the maintenance, upkeep and administration of those properties.

ECF Nos. 1-1, ¶ 12 (emphasis added); *id.*, ¶¶ 9–10. On April 20, 2022, Plaintiff instructed Defendant, via a letter,[2] to modify the joint accounts' Terms and Conditions to require Plaintiff's "sign off on" Mr. Zahmoul's transactions from the accounts. *Id.*, ¶¶ 23, 25, 44, 58. In August 2022, though unpled,[3] Plaintiff also informed Defendant that

---

[2] Despite Plaintiff's contention that "[t]here is no question as to the certainty of the instructions Plaintiff provided[,]" this letter is not submitted to the Court. *See* ECF No. 71, at 11. Nonetheless, as it must, the Court accepts Plaintiff's allegation as true.

[3] *Cf.* ECF No. 62, ¶¶ 12 ("In August 2022, Plaintiff informed [Defendant] that in addition to unilaterally cutting her funding for maintenance and living expenses by 75% in April 2021, [Mr. Zahmoul] had also stopped making premium payments for the children's and her healthcare plan with Cigna."), 24 ("[Defendant] knew that . . . from previous conversations with Plaintiff, the transferred funds were earmarked for the payment of Plaintiff's legal expenses in the UK divorce proceedings and her living expenses.").

$675,000 was "earmarked" for Plaintiff's legal fees in her divorce proceedings and "was not to be moved without her consent." ECF No. 71, at 2.

On or about September 1, 2022, Mr. Zahmoul[4] met with Defendant's employee in Jackson "ostensibly to discuss paying down the mortgage" on the properties. ECF No. 62, ¶ 13. Following this discussion, on September 15, 2022, Defendant, noting the Zahmouls' "'materially deteriorated'" financial condition, issued an immediate "loan principal reduction" of $1,720,000 from the mortgage. *Id.*, ¶ 18. That day, Mr. Zahmoul unilaterally transferred $675,000 from the joint accounts to pay down the Zahmouls' mortgage. *Id.*, ¶ 19. Over the next fifteen days, Mr. Zahmoul made additional mortgage payments, totaling $3,950,000, that did not pass through the joint accounts. *Id.*, ¶ 20(a)–(f). This was all part of Mr. Zahmoul's scheme, says Plaintiff, to "gain control of full ownership of [one] property" "for his individual post-separation benefit[,]" while saddling Plaintiff with the other property, encumbered with a hefty mortgage. *Id.*, ¶¶ 27–39. At some later time, when Plaintiff requested that Defendant reverse the $675,000 transaction, Defendant agreed to do so if Mr. Zahmoul consented. *Id.*, ¶ 27. Because Mr. Zahmoul withheld his consent, Defendant refused to reverse the transaction. *Id.*

Filed on March 22, 2023, Plaintiff's *Complaint* brings five claims against Defendant, including for: (1) breach of contract (*id.*, ¶¶ 42–45) ("Count I"); (2) breach of

---

[4] Plaintiff accentuates Mr. Zahmoul's "financial abuse of Plaintiff" and "misleading" "financial picture," including, *inter alia*, Mr. Zahmoul's allegedly undisclosed assets to Defendant and the Family Court at Bristol. ECF No. 62, ¶¶ 14–18, 21, 41. However distasteful, as to this Court's review of Plaintiff's contractual and negligence claims against Defendant, Plaintiff's allegations against Mr. Zahmoul are irrelevant.

the implied covenant of good faith and fair dealing (*id.*, ¶¶ 46–50) ("Count II"); (3)

negligence (*id.*, ¶¶ 51–55) ("Count III"); (4) a declaratory judgment that Plaintiff has a

right to reverse Defendant's $675,000 transfer under the contract's Terms and Conditions

(*id.*, ¶¶ 56–60) ("Count IV"); and (5) Defendant's specific performance of reversing the

$675,000 transfer (*id.*, ¶¶ 61–64) ("Count V").[5] Defendant filed its *Motion to Dismiss*,

along with a *Memorandum of Law in Support*, on March 24, 2023. ECF Nos. 67, 68.

Plaintiff responded on April 5, 2023, to which Defendant replied on April 11, 2023. ECF

Nos. 71, 72.

## STANDARD OF REVIEW

In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, district courts follow a

two-pronged approach. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

First, "a court considering a motion to dismiss can choose to begin by identifying

pleadings that, because they are no more than conclusions, are not entitled to the

assumption of truth." *Id. Iqbal* clarified that "the tenet that a court must accept as true all

of the allegations contained in a complaint is inapplicable to legal conclusions[,]" and

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id.* at 678.

Second, "[w]hen there are well-pleaded factual allegations, a court should assume

their veracity and then determine whether they plausibly give rise to an entitlement to

---

[5] Plaintiff brings five separate claims against Mr. Zahmoul, which this Court refrains from
addressing today. ECF No. 62, ¶¶ 65–85.

relief." *Id.* at 679. The Supreme Court stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility lies somewhere between possibility and probability; a complaint must establish more than a mere possibility that Defendant acted unlawfully, but the complaint does not need to establish that Defendant probably acted unlawfully. *See id.*

## PARTIES' ARGUMENTS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant moves to dismiss Plaintiff's claims with prejudice. *See* ECF No. 68, at 4, 19. Plaintiff's keystone breach of contract claim, argues Defendant, fails for several reasons. First, there was no unilateral modification under the Terms and Conditions because there is no indication that either Defendant or Mr. Zahmoul agreed, "in writing or otherwise," to abide by the modified terms. *See id.* at 8. Any oral modification, adds Defendant, would similarly require agreement by all three parties. *See id.* at 8–9. Second, Defendant did not breach the Terms and Conditions by refusing to approve Plaintiff's reversal instruction, which, *inter alia*, urges this Court to resort to extrinsic evidence beyond the contract's four corners. *See id.* at 9–11. Third, says Defendant, Plaintiff cannot show compensable damages because Mr. Zahmoul's $675,000 mortgage pay-down reduced both Zahmouls' liability. *See id.* at 12. Turning to

Plaintiff's remaining claims, Defendant contends that Plaintiff may not use the implied covenant of good faith and fair dealing to impose obligations on Defendant absent from the Terms and Conditions. *See id.* at 13–14. Defendant adds that Plaintiff's negligence claim similarly fails because, for one, it is barred by the economic loss rule, and two, Plaintiff has not shown that Defendant owed her a duty of care or breached any duty. *See id.* at 14–17. Defendant also argues that Plaintiff's dual requests for a declaratory judgment and specific performance fail because both "merely reiterate[] the allegations in support of her breach of contract claim" and – as to specific performance – improperly order Defendant's breach. *See id.* at 17–19. Finally, pursuant to Section (3) of the Terms and Conditions and Wyo. Stat. § 1-14-126(b),[6] Defendant requests its attorneys' fees and costs. *See* ECF No. 67, at 2.

Plaintiff responds that, following her April 20 letter, Defendant modified Section (5) of the Terms and Conditions "through its own inaction," "le[ading] Plaintiff to believe that she in fact did everything she needed to do to protect herself." *See* ECF No. 71, at 4–5. Plaintiff adds that Defendant was "on notice" that transferring the $675,000 would harm Plaintiff, demonstrating her compensable damages. *See id.* at 6. Plaintiff also argues that because Defendant "acceded" to Plaintiff's instructions, and caused her to believe that Defendant did so, her breach of the implied covenant pleading survives. *See id.* at 6–8. Regarding her negligence claim, Plaintiff contends that Defendant had a duty,

---

[6] "In civil actions for which an award of attorney[s'] fees is authorized, the court in its discretion may award reasonable attorney[s'] fees to the prevailing party without requiring expert testimony." Wyo. Stat. § 1-14-126(b).

"attendant to *any* banker," to inform Plaintiff that her instructions and communications were insufficient; moreover, Plaintiff is entitled to plead tort causes of action in the alternative to contract claims. *See id.* at 8–10 (emphasis in original). Finally, Plaintiff maintains that her requests for declaratory relief and specific performance are apposite, and that Defendant is not entitled to attorneys' fees. *See id.* at 10–11.

Defendant, *inter alia*, replies that Plaintiff's interpretation of the Terms and Conditions would mean that Plaintiff could unilaterally amend any contractual term "by simply sending a document to [Defendant] proclaiming the change." *See* ECF No. 72, at 4. Separately, says Defendant, Plaintiff cannot rely on banking industry standards to impose an obligation on Defendant absent from the Terms and Conditions. *See id.* at 7–8.

## ANALYSIS

The Court dismisses Plaintiff's five claims against her bank. First, Plaintiff fails to plausibly allege that Defendant breached their contract and that she is entitled to damages. Second, Plaintiff fails to plead how Defendant interfered or failed to cooperate in her performance in breaching Wyoming's implied covenant of good faith and fair dealing. Third, Plaintiff's negligence claim is barred by the economic loss rule. Fourth, a declaratory judgment is unwarranted when, *inter alia*, a reversal right is absent from the contract's terms. And fifth, because Plaintiff's breach of contract claim fails, Plaintiff is not entitled to a remedy of specific performance. I address each claim below, *seriatim*, and award Defendant its attorneys' fees and costs.

### A. *Count I: Breach of Contract.*

First, Plaintiff fails to plausibly allege that Defendant breached their contract and that she is entitled to damages.

A breach of contract claim consists of three elements: (1) "'a lawfully enforceable contract;'" (2) "'an unjustified failure to timely perform all or any part of what is promised'" (*i.e.,* the breach); and (3) "'entitlement of the injured party to damages.'" *Peterson v. Meritain Health, Inc.*, 508 P.3d 696, 705 (Wyo. 2022) (quoting *Halling v. Yovanovich*, 391 P.3d 611, 616–17 (Wyo. 2017)) (brackets omitted). The parties dispute elements (2) and (3). Notably, Plaintiff attempts two theories under element (2), including that Defendant breached a *modified* contract by: (1) allowing Mr. Zahmoul's unilateral transfer; and (2) refusing to subsequently reverse Mr. Zahmoul's transfer. Both fail. Plaintiff also has not shown that she is entitled to damages.

I briefly summarize the pertinent contract terms. Subject to Wyoming law, the tripartite contract[7] states: "[Defendant] must agree to any variation in writing either on the signature card for [Plaintiff and Mr. Zahmoul's] account or in some other document."[8] ECF No. 51-1, at 13. "[A]ny of [Plaintiff or Mr. Zahmoul], *acting alone*, who signs to open the account or has authority to make withdrawals may withdraw or transfer all or any part of the account balance at any time." *Id.* at 14 (emphasis added). The parties, so far, concur, but was their contract modified thereafter? Here, Plaintiff belies her own *Complaint* in response to Defendant. *Compare* ECF No. 62, ¶ 58 ("The

---

[7] The Terms and Conditions "control [Plaintiff and Mr. Zahmoul's] account(s) with [Defendant]." ECF No. 51-1, at 12.

[8] *See also* ECF No. 51-1, at 13 ("As used in this document the word[] 'we' . . . mean[s] the financial institution and the word[] . . . 'your' mean[s] the account holder(s)[.]").

terms of [the account] agreements were *expressly modified by Plaintiff* on April 20th,

2022[.]) (emphasis added), *and id.*, ¶ 59 ("[E]ven assuming that the account agreements

were not modified by Plaintiff . . ."), *with* ECF No. 71, at 4 ("*[Defendant] in fact*

*modified* the [Terms and Conditions] through its own inaction following its meetings and

communications with Plaintiff.") (emphasis added).[9] As I must,[10] I first consider what

Plaintiff pled – that *she* modified the contract – tabling the alternative.

Modification can occur in two ways: (1) in writing under the contract's terms; or

(2) orally under Wyoming law.[11] Irrespective of avenue, modification requires the "same

mutual assent necessary for the formation of the initial contract." *Keever v. Payless Auto*

*Sales, Inc.*, 79 P.3d 496, 500 (Wyo. 2003). The Wyoming Supreme Court has favorably

cited:

> 'It is well settled that the terms of a written contract may be varied,
> modified, waived, annulled or wholly set aside by any subsequently
> executed contract, whether such subsequently executed contract be in parol

---

[9] Separate contradictions similarly taint Plaintiff's *Complaint*. *Compare* ECF No. 62, ¶ 57 ("The governing account agreements in place at [Defendant] for the [Defendant] Accounts at issue provide that one person may instruct [Defendant] as to the transfer of funds."), *with id.*, ¶ 2 ("All [Defendant] Accounts require the signatures and authorization of both Plaintiff and [Mr. Zahmoul] in the conduct of business."), *and id.*, ¶ 63 ("Instead, [Defendant] has relied on a reading of its account agreements to state that the consent of only one spouse is required to cause the transfer of funds.").

[10] *See Kearney v. Dimanna*, 195 F. App'x 717, 721 n.2 (10th Cir. 2006) (unpublished) (stating that it is "well-established" that a district court is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint" in deciding a motion to dismiss); *see also Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (holding that when considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, courts may refer to documents outside of the complaint if they are referred to in the complaint).

[11] *See James v. James*, 493 P.3d 1258, 1270 (Wyo. 2021) ("[E]ven when a contract contains a clause requiring any modification to be in writing, we may in appropriate circumstances recognize an oral modification."); *Ruby Drilling Co., Inc. v. Duncan Oil Co., Inc.*, 47 P.3d 964, 968 (Wyo. 2002) ("The party asserting that a written agreement was modified by the subsequent expressions or conduct of the parties must prove so by clear and convincing evidence.").

or in writing. *One party to a contract cannot unilaterally change the terms thereof. Modification requires the assent of all the parties to the contract.*'

*Id.* (quoting *Fast v. Kahan*, 481 P.2d 958, 961 (Kan. 1971) (internal citations omitted)) (emphasis altered). Plaintiff alleges that her April 20, 2022 letter put Defendant "on notice that the account instructions had in fact changed." ECF No. 62, ¶¶ 23, 25, 44, 58.[12] However, under either avenue to modification, Plaintiff comes up short. Plaintiff does not allege that Defendant "agree[d] to [the] variation in writing" as the Terms and Conditions require.[13] ECF No. 51-1, at 13. Nor does Plaintiff indicate that Defendant *or* Mr. Zahmoul orally agreed to Plaintiff's modification under Wyoming law – where all three players must sign off. *See Keever*, 79 P.3d at 499–500. But wait, counters Plaintiff, Defendant acquiesced via its inaction; I address this argument *infra*. For now, Plaintiff's

---

[12] Plaintiff also alleges: "*Under the account agreements*, [Defendant] was obligated to ['make proper notations in its records as to [Plaintiff's] instructions'] but failed to carry out those instructions." ECF No. 62, ¶ 44 (emphasis added). Plaintiff fails, however, to direct the Court to any section in the parties' contract requiring Defendant to make such notations.

[13] The Court rejects Plaintiff's characterization of Section (2) as a "strained interpretation," as well as its Hail Mary heave to manufacture contractual ambiguity. *See* ECF No. 71, at 4, 5. In fact, it strains this Court to devise a more unequivocal clause than, simply, any variation must be in writing. *See Primrose Ret. Communities, LLC v. Ghidorzi Constr. Co., LLC*, 523 P.2d 1219, 1225 (Wyo. 2023) ("[A] contract is ambiguous only when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.") (internal quotation omitted); *Thornock v. PacifiCorp*, 379 P.3d 175, 180 (Wyo. 2016) ("In the absence of any ambiguity, the contract will be enforced according to its terms[.]") (internal quotation omitted); *Union Pac. Res. Co. v. Texaco, Inc.*, 882 P.2d 212, 220 (Wyo. 1994) ("[W]hen the terms of a contract are unambiguous, our search for the intent of the parties is confined to the language contained within the four corners of an integrated contract.") (internal quotations omitted); *see also Int'l Bhd. of Elec. Workers, Local Union Nos. 12, 111, 113, 969 v. Prof'l Hole Drilling, Inc.*, 574 F.2d 497, 499 (10th Cir. 1978) (noting that "where the terms of a contract are unambiguous the parties will be bound by that instrument").

mere "notice" is not "mutual assent." ECF No. 62, ¶ 23; *id.* at 500 (internal quotation omitted).

Plaintiff tacks, diverting from her *Complaint*: her April letter was an "other document" that satisfied the Terms and Conditions' writing requirement.[14] This, too, fails. Plaintiff does not allege that Defendant "agree[d]"[15] to her letter. If I follow Plaintiff's theory, as Defendant notes,[16] any party could amend any contract term. Say Mr. Zahmoul emailed his banker that, effective immediately, any transfer must be bilateral. Would that email amend Section (5)?[17] Obviously not. Remember, any modification requires all three to agree, as opposed to one party's "*'unilateral disregard' of certain terms*." *Big-D Signature Corp. v. Sterrett Properties, LLC*, 288 P.3d 72, 81 (Wyo. 2012) (citing *Quin Blair Enterprises, Inc. v. Julien Const. Co.*, 597 P.2d 945, 952 n.6 (Wyo. 1979)) (emphasis added). Plaintiff's April 20 letter attempted to do just that. In sum, the parties' contract was not modified.[18]

---

[14] *See* ECF Nos. 71, at 5; 51-1, at 13.

[15] *See* ECF Nos. 71, at 5; 51-1, at 13.

[16] *See* ECF No. 72, at 4.

[17] Interestingly, Plaintiff does not raise Section (5)'s "until we receive written notice to the contrary" clause to argue that her April 20 letter notified Defendant of altered withdrawal authorizations. *See* ECF No. 51-1, at 14. Accordingly, I refrain from addressing an unargued proposition, adding that the remaining portion of the sentence likely restricts that clause to circumstances regarding "indorse[ment] [of] . . . item[s] payable to [Plaintiff or Mr. Zahmoul][.]" *See id.*

[18] Separately, even assuming Plaintiff's modification to be true and overlooking Mr. Zahmoul, I note, *sua sponte*, my skepticism that Defendant received any consideration from a putative modification. *See James*, 493 P.3d at 1270 ("Modification of an agreement is void unless supported by consideration.") (internal quotation and brackets omitted) (also noting that Wyoming follows the "pre-existing duty rule, namely, an agreement to do what one is already bound to do cannot serve as consideration to support a modification") (internal quotation omitted).

I, *arguendo*, flip the script, as Plaintiff does in her response.[19] Did *Defendant* modify the contract via its inaction? No. The onus, says Plaintiff, was on Defendant to tell her that she had not modified the contract.[20] This is a straw man fallacy. To prove the second element of her breach of contract claim, Plaintiff must show that Defendant "fail[ed] without legal excuse to perform *any promise* which forms the *whole or part of a contract*." *Reynolds v. Tice*, 595 P.2d 1318, 1323 (Wyo. 1979) (emphasis added). Nowhere in the Terms and Conditions do the parties contract an obligation to explain terms to another party and Plaintiff may not impose an obligation on Defendant absent from the Terms and Conditions. Put differently, it was not "incumbent"[21] upon Defendant to respond to Plaintiff's letter that Section (5) remained intact. Nor does the status quo in the months following constitute any modification by Defendant. Tellingly, Plaintiff[22] offers no authority indicating that one party's mere inaction, following another party's attempted alteration, can unilaterally modify a tripartite contract. I, thus, reject Plaintiff's unpled end-around. Therefore, the Terms and Conditions were unmodified – and Section (5) plainly controls. As Plaintiff concedes,[23] Defendant did not breach by allowing Mr.

---

[19] *Compare* ECF No. 62, ¶ 58, *with* ECF No. 71, at 4.

[20] *See* ECF No. 71, at 5.

[21] *See* ECF No. 71, at 5.

[22] Plaintiff's lone citation refers to the Wyoming Supreme Court's extraneous quotation of a California state decision. *See Strong Const., Inc. v. City of Torrington*, 255 P.3d 903, 912 (Wyo. 2011) (quoting *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1051 (1st Dist. 2006)); ECF No. 71, at 4. In fact, the Wyoming Supreme Court noted the sentence Plaintiff cites to illuminate that "contract damages are generally awarded on an all-or-nothing basis." *Id.* Plaintiff's authority, therefore, shoulders little as to Defendant's alleged breach.

[23] *See* ECF No. 62, ¶ 43.

Zahmoul's unilateral transaction. Thus, under her first theory, Plaintiff fails to plausibly plead Defendant's breach of contract.

I turn to Plaintiff's second theory under element (2): surely if one can authorize transactions, so too can he or she reverse any transfer. Defendant's refusal to reverse the transaction, says Plaintiff, is the breach – violating the contract and in "defiance of standard bank account transactions standards and procedures[.]"[24] I disagree. Though I am hesitant to encroach on confidential mediation discussions,[25] Plaintiff – once again – fails to show how Defendant's refusal "forms the whole or part of" their contract. *See Reynolds*, 595 P.2d at 1323. Plaintiff argues that a "common sense" reading of Section (5) implies a unilateral right of reversal.[26] But Plaintiff cannot manufacture a reversal right that does not exist in the terms. Under her theory, Plaintiff and Mr. Zahmoul could endlessly exchange transfers and reversals until a fed-up Defendant froze the accounts, which, in fact, defies common sense. Furthermore, pursuant to Section (37), Defendant may place a hold on account funds and "refuse" certain transactions "to allow" this Court's review, or intriguingly, until Defendant receives "evidence satisfactory to [it] that the dispute has been resolved" (*e.g.,* that the Zahmouls, as joint account owners, both

---

[24] *See* ECF No. 62, ¶¶ 22, 25, 27–28, 43; *see also* ECF No. 71, at 5 n.2.

[25] Plaintiff's *Complaint* does not specify when she requested that Defendant reverse the transaction, but it appears to the Court that Plaintiff did so during mediation on January 4, 2023. *See* ECF Nos. 62, ¶ 27; 44, ¶ 3; 60, at 3; *see also* Fed. R. Evid. 408(a)(2); *Bond v. Bd. of Cnty. Commissioners of Muskogee Cnty., Okla.*, No. 20-7067, 2023 WL 3589081, at *10 (10th Cir. May 23, 2023) ("'Rule 408 only bars admission of evidence relating to settlement discussions if that evidence is offered to prove liability for or invalidity of the claim or its amount[.]'") (quoting *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997)).

[26] *See* ECF No. 62, ¶ 22.

consent to the reversal).[27] Nor will I wade into the murky waters of undefined banking standards and unnecessarily beyond the contract's four corners.[28] Therefore, Plaintiff fails to plausibly plead Defendant's breach of contract under her second theory as well.

I conclude with element (3): damages. "'Damages must be proven with a reasonable degree of certainty, and a court may not resort to speculation or conjecture in determining the proper amount to award.'" *Knight v. TCB Const. and Design, LLC*, 248 P.3d 178, 184 (Wyo. 2011) (quoting *Capshaw v. Schieck*, 44 P.3d 47, 52 (Wyo. 2002)). Defendant argues that Plaintiff cannot show compensable damages because: (1) Mr. Zahmoul's transfer applied to the couple's joint mortgage (*i.e.,* marital debt); and (2) the joint accounts' funds were subject to the Bristol Family Court's withdrawal restrictions.[29] Plaintiff responds that her harm is an inability to pay legal fees overseas due to Defendant's transfer of her allegedly earmarked funds.[30]

"In an action for breach of contract, the damages awarded are designed to put the plaintiff in the same position as if the contract had been performed." *Capshaw*, 44 P.3d at 52. Here, the contract was performed; Plaintiff, under either theory of withdrawal or reversal, has not shown compensable damages stemming from any breach. Moreover, the UK Order *explicitly* allowed for Mr. Zahmoul to meet the couple's mortgage payments –

---

[27] *See* ECF Nos. 51-1, at 23; 68, at 10–11; 71-2, at 1–2.

[28] *See* ECF No. 62, ¶ 28; *Westchester Fire Ins. Co. v. Interior Partitions, Inc.*, No. 18-CV-34-SWS, 2019 WL 5273956, at *2 (D. Wyo. Mar. 18, 2019) ("The contract need not be interpreted in a vacuum, but the Court will not rely on extrinsic evidence to determine whether a contract is ambiguous.").

[29] *See* ECF Nos. 68, at 12; 72, at 6.

[30] *See* ECF Nos. 71, at 6; 62, ¶ 45 ("[Defendant's] breaches of its agreements with Plaintiff have caused her substantial consequential damages in an amount to be proven at trial, and no less than $675,000."), at 19 (requesting "[c]ompensatory damages of no less than $675,000").

and noted that the couple's funds in the joint accounts were limited to payments related to the properties.[31] Plaintiff's "notice"[32] to Defendant of what-she-considered earmarked funds for her legal costs is plainly insufficient to show that she is entitled to those funds as damages.

In sum, Plaintiff fails to plead elements (2) and (3) of her breach of contract claim. Accordingly, I dismiss Count I.

### B. *Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing.*

Second, Plaintiff fails to plausibly allege that Defendant breached the implied covenant of good faith and fair dealing.

Under Wyoming law, "'every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.'" *Wilcox v. Sec. State Bank*, 523 P.3d 277, 289 (Wyo. 2023) (quoting *Skyco Res., LLP v. Fam. Tree Corp.*, 512 P.3d 11, 24 (Wyo. 2022)). Distinct from Plaintiff's breach of contract claim,[33] this covenant requires:

> '[T]hat neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement . . . A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's performance. The purpose, intentions, and expectations of the parties should be determined by *considering the contract language and the course of dealings between and conduct of the parties*. The covenant of good faith and fair dealing *may not, however, be construed to establish new, independent rights or duties not agreed upon* by the parties . . . In the absence of evidence of self-dealing or breach of

---

[31] *See* ECF No. 1-1, ¶ 12. Once again, Plaintiff's claims of "questionable and arguably illicit conduct" by Mr. Zahmoul are irrelevant to her breach of contract claim against Defendant. *See* ECF No. 71, at 6.

[32] *See* ECF No. 71, at 6.

[33] *See Skyco Res., LLP*, 512 P.3d at 25 (internal citation omitted).

community standards of decency, fairness or reasonableness, the *exercise of contractual rights alone will not be considered a breach of the covenant*.'

*Id.* (quoting *Skyco Res., LLP*, 512 P.3d at 25) (emphasis added). Plaintiff pleads three breach theories, including Defendant's: (1) contravening Plaintiff's "express instructions regarding the disposition and handling of transactions" from the joint accounts; (2) allowing the unilateral $675,000 transfer "to the detriment of Plaintiff;" and (3) "refusing to reverse the transfer at Plaintiff's instruction."[34]

Accepted as true, all three nonetheless fail. "Under Wyoming law, a claim for breach of the implied covenant of good faith and fair dealing cannot exist where a party is simply exercising those rights that they are contractually entitled to exercise." *Harper v. Fidelity and Guar. Life Ins. Co.*, 234 P.3d 1211, 1221 (Wyo. 2010). As Plaintiff concedes,[35] Defendant may authorize a unilateral transfer under Section (5) – which, alone, defeats theories (1) and (2). *See City of Gillette v. Hladky Const., Inc.*, 196 P.3d 184, 196 (Wyo. 2008) ("A party is entitled to judgment as a matter of law on the claim only where the actions alleged to have breached the covenant *were in conformity with the clear contract language*.") (emphasis added). Put another way, neither Plaintiff's instructions, nor her risk of detriment, alter Defendant's Section (5) prerogative to approve a unilateral transfer.[36] Plaintiff responds that she had "reason to believe that her

---

[34] *See* ECF No. 62, ¶ 49.
[35] *See* ECF No. 62, ¶¶ 43, 57.
[36] As aforementioned, the contract was not modified. *See supra*, Section A., at 11–13; *but see* ECF No. 71, at 7 (contending that "when a contract is arguably modified, the course of conduct and industry standards take precedence [over the contract language]").

[April 20 letter] would in fact be honored."[37] But the contract's terms did not require Defendant's layperson explanation of an unambiguous Section (5). I am unwilling to infer that Defendant had a duty to do so absent clear language in the contract indicating that was the parties' intent. *See Bear Peak Res., LLC v. Peak Powder River Res., LLC*, 403 P.3d 1033, 1054 (Wyo. 2017) (refusing to find that the implied covenant imposed a requirement to inform a plaintiff of a separate strategic decision when doing so "would create new duties [that] the parties had not agreed to in the" contract); *Wilder v. Cody Country Chamber of Com.*, 868 P.2d 211, 221 (Wyo. 1994) (noting that the implied covenant cannot "create duties that supersede express provisions of written contracts").[38] The same logic defeats theory (3): Plaintiff cannot invent a reversal right that does not exist in the terms.

Plaintiff leans on *City of Gillette* to argue that banking "industry standards" required Defendant's explanation of Section (5) to Plaintiff. *See* 196 P.3d at 196–99 (holding that one party's breach of the implied covenant by "interfering or failing to cooperate with [the modifying party's] ability to perform was for the jury to decide"); ECF No. 71, at 7. Preliminarily, I see little reason to revert to extrinsic standards when the plain contract language bests each theory of recovery. Fair enough, says Plaintiff, but

---

[37] *See* ECF No. 71, at 7.

[38] *See also Denbury Onshore, LLC v. Christensen*, 722 F. Appx. 768, 779 (10th Cir. 2018) (unpublished) ("But Wyoming law doesn't permit . . . use [of] the implied covenant of good faith and fair dealing in an existing surface use agreement to impose a new duty that neither arises from the contract language nor is indispensable to effectuate the parties' purpose in entering into that agreement.").

Defendant's failure to correct the record is course of conduct that shows a breach.[39] In

*City of Gillette*, one party presented evidence showing that, despite the governing terms

of a contract, another party acceded to an "oral modification," including, *inter alia*,

nodding of heads in agreement, other witnesses attesting to the seeming agreement,

unobjected meeting minutes and letters reflecting the modification, and subsequent in-

person meetings confirming the modification. 196 P.3d at 197–98. By contrast, Plaintiff

merely alleges *her* disregard of Section (5), omitting a factual basis nearing *City of*

*Gillette* or Defendant's post-contract "'course of performance'" that convinced her of an

amended Section (5). *See Roussalis v. Wyo. Med. Ctr., Inc.*, 4 P.3d 209, 238 (Wyo. 2000)

(quoting I E. Allan Farnsworth, *Farnsworth on Contracts*, § 3.28, at 357 (1990)). In sum,

Plaintiff fails to plead how Defendant "interfere[d] or fail[ed] to cooperate" in her

performance. *See Wilcox*, 523 P.3d at 289. She similarly fails to demonstrate that

Defendant "acted in 'bad faith' by violating community standards of decency, fairness or

reasonableness." *See Universal Drilling Co., LLC v. R & R Rig. Serv., LLC*, 271 P.3d

987, 999 (Wyo. 2012).

Therefore, Plaintiff fails to plausibly plead a breach of the implied covenant of

good faith and fair dealing. Accordingly, I dismiss Count II.

### C. Count III: Negligence.

Third, Plaintiff's negligence claim is barred by the economic loss rule.

---

[39] *See* ECF No. 71, at 7.

To plead negligence,[40] Plaintiff must show: "'(1) the defendant owed the plaintiff a duty[41] to conform to a specified standard of care, (2) the defendant breached the duty of care, (3) the defendant's breach of the duty of care proximately caused injury to the plaintiff, and (4) plaintiff's injury is compensable by money damages.'" *Hebert v. Sinclair Oil Corp.*, No. 15–CV–0084, 2016 WL 9450460, at *4 (D. Wyo. Oct. 7, 2016) (quoting *Valance v. VI–Doug, Inc.*, 50 P.3d 697, 701 (Wyo. 2002)). Defendant, first, argues that Plaintiff's claim is barred by the economic loss rule and later challenges Plaintiff's showings of elements (1) and (2).[42] Plaintiff counters that she is entitled to plead a tort claim in the alternative to a contract claim and that Defendant breached a standard of care "attendant to *any* banker."[43]

"The economic loss rule bars a party to a contract from using a tort claim to recover contract damages *unless* the party can show *it is owed an 'independent duty' in tort* creating a separate entitlement to those damages." *Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 770 (10th Cir. 2021) (emphasis added); *Excel Const., Inc. v. HKM Eng'g, Inc.*, 228 P.3d 40, 48 (Wyo. 2010) ("Recovery on a tort theory requires a showing that a duty independent of contract was violated."). In other words, the rule

---

[40] In Wyoming, "'[n]egligence occurs when one fails to act as a reasonable person of ordinary prudence under like circumstances.'" *Bridger v. Arctic Cat, Inc.*, No. 13–CV-193–SWS, 2015 WL 11090925, at *8 (D. Wyo. Jan. 22, 2015) (quoting *Lucero v. Holbrook*, 288 P.3d 1228, 1232 (Wyo. 2012)).
[41] "A duty may arise based upon the existence of a contract, a statute, or the common law, 'or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff.'" *Lucero*, 288 P.3d at 1232 (quoting *Killian v. Caza Drilling, Inc.*, 131 P.3d 975, 980 (Wyo. 2006)).
[42] *See* ECF No. 68, at 14–17.
[43] *See* ECF No. 71, at 8–10 (emphasis in original).

"bars recovery in tort when a plaintiff claims purely economic damages unaccompanied by physical injury to persons or property" and is "founded on the theory that parties to a contract may allocate their risks by agreement and do not need the special protections of tort law to recover for damages caused by a breach of the contract." *Rissler & McMurry Co. v. Sheridan Area Water Supply Joint Powers Bd.*, 929 P.2d 1228, 1234–35 (Wyo. 1996) (internal quotation omitted). The exception's "salient question is not whether the tort claim is based in negligence, but whether a tort duty exists independent of any duties established in a contract." *Rogers v. Wright*, 366 P.3d 1264, 1275 (Wyo. 2016).

I find that the economic loss rule bars Plaintiff's negligence claim. I begin at 10,000 feet before conducting the independent duty exception's four-factor analysis. Plaintiff's case against Defendant, at its core, is a breach of contract action where Plaintiff seeks compensatory damages – or economic losses within the rule. Describing her own negligence claim, Plaintiff states: "[Defendant] owed Plaintiff common law duties to exercise reasonable care in the management of its business affairs and *performance of its obligations in connection with those contracts*." ECF No. 62, ¶ 52 (emphasis added). "[W]hen parties' difficulties arise directly from a contractual relationship, the resulting litigation concerning those difficulties is one in contract no matter what words the plaintiff may wish to use in describing it." *Snyder v. Lovercheck*, 992 P.2d 1079, 1088 (Wyo. 1999) (internal quotation omitted). Plaintiff attempts escape by pointing to her right to "inconsistent pleading in the alternative," *see* Fed. R. Civ. P.

8(d)(3), and the election of remedies doctrine.[44] Neither saves Count III. First, a

negligence claim, barred by the economic loss rule, cannot be raised in the alternative;

Plaintiff offers no authority to the contrary. And second, Defendant is not forcing

Plaintiff to choose between remedies – nor is Plaintiff seeking "recission of [the] contract

and then subsequently claim[ing] a breach of contract." *See Castleberry v. Phelan*, 101

P.3d 460, 464 (Wyo. 2004) (citing *Walters*, 745 P.2d at 913). Both doctrines raised by

Plaintiff are, thus, inapposite.

The Court also finds that Plaintiff has not met the independent duty exception. To

determine whether a tort claim is premised on a duty independent of contractual duties or

"is simply a repackaged contract claim requires [1] consideration of the conduct alleged,

[2] its relationship to the contractual duties of the parties, [3] the source of the tort duty

alleged to have been breached, and [4] the nature of the damages claimed." *Excel Const.*,

228 P.3d at 48. I address each *Excel* factor below.

First, I consider the conduct alleged. Plaintiff's negligence claim is identical to her

breach of contract and implied covenant of good faith and fair dealing claims. *Compare*

ECF No. 62, ¶ 53 ("[Defendant] breached its duty of reasonable care to Plaintiff and

acted carelessly, negligently, and/or recklessly in its conduct of business with [Mr.

Zahmoul] *in violation of Plaintiff's clear instructions, established practices in the*

---

[44] *See* ECF No. 71, at 9–10; *Virgin Enters. Ltd. v. Virginic LLC et al.*, No. 19-CV-220-F, ECF
No. 42, at 3–4 (D. Wyo. Apr. 10, 2020) (declining to strike a defendant's affirmative defense, in
the alternative, of fair, nominative or descriptive use); *Walters v. Michel*, 745 P.2d 913, 916
(Wyo. 1987) (holding that "[r]emedies mentioned in a contract generally are not exclusive
remedies").

*banking industry and the intent of the UK order*.") (emphasis added), *with id.*, ¶ 44

("[Defendant] . . . failed to carry out those instructions."), *and id.*, ¶ 49 ("[Defendant] . . .

fail[ed] to honor Plaintiff's express instructions[.]").

Second, I examine the negligence claim's relationship to the contractual duties of

the parties. Plaintiff's negligence claim alleges that Defendant owed Plaintiff "duties to

exercise reasonable care in the management of its business affairs and performance of its

obligations in connection with those contracts." ECF No. 62, ¶ 52. Within that contract,[45]

Defendant commits that "[n]othing in this [contract] is intended to vary our duty to act in

good faith and with ordinary care when required by law." *See* ECF No. 51-1, at 13.

Though in varied phrasing, these duties are, in effect, identical.

Third, I consider the source of the tort duty alleged to have been breached.

Wyoming does not recognize a banker's duty – as Plaintiff urges.[46] Earlier this year, the

Wyoming Supreme Court opined:

> This Court has always been very cautious and deliberate in deciding
> whether to adopt new causes of action. In the past we have been rightfully
> hesitant to find tort causes of actions where a contract exists. In *Birt*, we
> stated: 'We have not to date recognized or adopted a general noncontractual
> duty that might be characterized as the duty of a reasonably competent
> banker.'

*Wilcox*, 523 P.3d at 286, 293 (quoting *Birt v. Wells Fargo Mortg., Inc.*, 75 P.3d 640, 659

(Wyo. 2003)) (other internal citations omitted) (declining to recognize new causes of

action for negligent advising or lending). In a related case, the Wyoming Supreme Court

---

[45] "The duty of care is defined by the parties' contract." *Sinclair Wyo. Ref. Co. v. Pro-Inspect Inc*, No. 12-CV-196-J, 2019 WL 3992271, at *19–20 (D. Wyo. Aug. 23, 2019).
[46] *See* ECF No. 71, at 9.

held that home builders have a duty of reasonable care arising out of their status as "professionals" independent of any duties arising from a contractual obligation "because *a contract need not exist in order for the tort duty to exist.*" *Rogers*, 366 P.3d at 1275 (emphasis added). Whereas home builders have a duty of reasonable care not to build homes negligently, Plaintiff offers no corresponding duty of her banker – explicitly unrecognized under binding state law – that Defendant owes independent of their contract.

Fourth and finally, I look to the nature of the damages asserted. Plaintiff's negligence claim asserts damages to the marital estate and her ability to pay legal fees stemming from Defendant's alleged "failures . . . to exercise reasonable care and breaches of its respective duties owed to Plaintiff." ECF No. 62, ¶ 55. Earlier in her *Complaint*, Plaintiff's damages for breach of contract and breach of the implied covenant of good faith and fair dealing amount to $675,000 – which, Plaintiff says, were "earmarked for the payment of [her] legal expenses in the UK divorce proceedings[.]" *Id.*, ¶¶ 24, 45, 50; *see* ECF No. 71, at 3 ("Without [the $675,000], Plaintiff has no funds to prosecute her divorce proceedings and has been harmed monetarily and otherwise."), 10 (noting "the harm that would occasion Plaintiff in the event the $675,000 were transferred"). In sum, the nature of the damages asserted by all three claims are identical.

The four *Excel* factors yield this: the duties arising from "reasonable care" and "obligations in connection with" the Terms and Conditions – and Defendant's alleged negligence in breaching those duties – are not independent of the contract among

Plaintiff, Defendant, and Mr. Zahmoul.[47] Therefore, Plaintiff has not met the independent

duty exception and the economic loss rule bars recovery of her negligence claim.

Accordingly, I dismiss Count III.

### D. Count IV: Declaratory Judgment.

Fourth, I decline Plaintiff's request for declaratory relief regarding a unilateral

right of reversal, pursuant to the Declaratory Judgment Act, *see* 28 U.S.C. § 2201(a).

"[T]he Declaratory Judgment Act 'gave the federal courts competence to make a

declaration of rights; it did not impose a duty to do so.'" *State Farm Fire & Cas. Co. v.*

*Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Public Affairs Assoc., Inc. v.*

*Rockover*, 369 U.S. 111, 112 (1962)). It "confers a discretion on the courts rather than an

absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995).

I reject Plaintiff's dual bases for declaratory relief. First, the contract was not

modified by Plaintiff. *See* ECF No. 62, ¶ 58; *supra*, Section A., at 11–13. And second,

Plaintiff does not possess a unilateral right to reverse transactions under the Terms and

Conditions. *See id.*, ¶ 59; *supra*, Section A., at 15–16. Furthermore, because the damages

sought are already sustained, this case is inapposite for declaratory relief. *See U.S.*

*Aviation Underwriters, Inc. v. Dassault Aviation*, 505 F. Supp. 2d 1252, 1271 (D. Wyo.

2007) (holding that the dismissal of a declaratory judgment claim was warranted because

the "accident and resulting economic loss . . . [had] already occurred" and the declaratory

---

[47] *See* ECF No. 62, ¶¶ 51–55; *Phillips & Jordan, Inc. v. Erosion Control Applications, Inc.*, No.
19-CV-6-F, 2021 WL 2944902, at *2–3 (D. Wyo. May 19, 2021) (holding that the economic loss
rule barred a plaintiff's negligence claim following an *Excel* factor analysis).

judgment claim merely "[sought] to address [plaintiff's] breach of contract/warranty claims in a declaratory judgment context"); *Marlin Oil Corp. v. Lurie*, 417 F. Appx. 740, 745 (10th Cir. 2011) (unpublished) ("A declaratory judgment is meant to define the legal rights and obligations of the parties in anticipation of some future conduct, not simply to proclaim liability for a past act.").[48] Relying on the "fluid nature of [her] contract claims,"[49] Plaintiff offers no support for her request; she also fails to state a claim upon which relief can be granted. Exercising its discretion, the Court declines to issue any declaratory judgment regarding a reversal right absent from the contract's terms. I, thus, dismiss Count IV.

### E. Count V: Specific Performance.

Fifth, because Plaintiff's breach of contract claim fails, Plaintiff is not entitled to any relief. However, even *if* Defendant breached the contract warranting relief, Plaintiff would still not be entitled to specific performance.[50]

"In general, the legal remedy for a breach of contract is the award of damages[.]" *Dewey v. Wentland*, 38 P.3d 402, 420–21 (Wyo. 2002). Specific performance "is a means of compelling a contracting party to do precisely what [it] should have done without being coerced by a court." *Ekberg v. Sharp*, 76 P.3d 1250, 1257 (Wyo. 2003). The

---

[48] "The Declaratory Judgment Act remedies are available only if a judicially remediable right already exists." *Ketcham v. U.S. Nat'l Park Serv.*, No. 16-CV-00017-SWS, 2016 WL 4268346, at *1 n.1 (D. Wyo. Mar. 29, 2016).

[49] *See* ECF No. 71, at 10.

[50] *See Peter D. Holdings LLC v. Wold Oil Properties, LLC*, No. 17-CV-212-R, 2020 WL 5406238, at *23–24 (D. Wyo. Aug. 12, 2020) (assuming, *arguendo*, plaintiff's entitlement to relief despite its wanting breach of contract claim, yet still denying plaintiff's requested relief of specific performance).

remedy may only be considered as an alternative to monetary damages and when the aggrieved party proves that monetary damages are inadequate or impracticable. *See Takahashi v. Pepper Tank & Cont. Co.*, 131 P.2d 339, 346 (Wyo. 1942). An equitable remedy[51] granted in limited circumstances and the Court's discretion, specific performance is warranted only if there is a "valid, binding contract and the facts and special equities of the situation demand such relief." *Davis v. Harmony Dev., LLC*, 460 P.3d 230, 240 (Wyo. 2020) (quoting *Dewey*, 38 P.3d at 416). "Before a court may order a contract to be specifically performed, the contract terms must be so certain that the court can require the specific thing agreed upon to be done." *Fowler v. Fowler*, 933 P.2d 502, 504 (Wyo. 1997).

Briefly, Plaintiff cannot point to a term bestowing her authority to reverse a transaction. Would Plaintiff have the Court order Defendant's compliance with Section (5)? Nowhere in Section (5) lies a unilateral right of reversal. While the contract at bar is valid, binding, and unmodified, the facts and special equities do not mandate specific performance. *See Davis*, 460 P.3d at 240. Separately, Plaintiff makes no effort to argue that monetary damages are inadequate or impracticable. *See Takahashi*, 131 P.2d at 346. Accordingly, I dismiss Count V.

### F. Attorneys' Fees and Costs.

I award Defendant its attorneys' fees and costs incurred to date.

---

[51] While it is more apt to describe specific performance as a remedy, rather than a cause of action as Plaintiff does, the Court nonetheless considers Plaintiff's request. *See* ECF No. 62, ¶¶ 61–64; *Morningstar v. Robison*, 527 P.3d 241, 244 (Wyo. 2023).

Generally, Wyoming subscribes to the American rule regarding recovery of attorneys' fees – namely, each party is responsible for her own attorneys' fees. *See Morrison v. Clay*, 149 P.3d 696, 701–02 (Wyo. 2006) (citing *Schlesinger v. Woodcock*, 35 P.3d 1232, 1239 (Wyo. 2001)).[52] "However, a contract may expressly authorize an award of attorneys' fees to a prevailing party." *Id.*

Pursuant to Section (3) of the Terms and Conditions and Wyo. Stat. § 1-14-126(b), the Court finds that Defendant is entitled to attorneys' fees and costs from Plaintiff. *See* ECF No. 51-1, at 13. I decline Plaintiff's suggestion that attorneys' fees be divided between Plaintiff and Mr. Zahmoul.[53] I instruct Plaintiff and Defendant to confer in an effort to reach an agreement on this issue. If the parties are unable to agree, Defendant may file a motion for attorneys' fees, together with supporting documentation and a brief.

## CONCLUSION

For the foregoing reasons, Plaintiff's five claims against Defendant, NBH Bank, fail; pursuant to Fed. R. Civ. P. 12(b)(6), they are dismissed with prejudice.[54]

Therefore, IT IS **HEREBY ORDERED** that Defendant's *Motion to Dismiss* (ECF No. 67) is **GRANTED**.

Furthermore, IT IS **HEREBY ORDERED** that Plaintiff's claims within its *Second Amended Complaint* (ECF No. 62, ¶¶ 42–64) against Defendant, NBH Bank, are

---

[52] *See also Poulton v. Evanston Clinic Corp.*, No. 12-CV-150-J, 2014 WL 11515823, at *2 (D. Wyo. Feb. 4, 2014) ("The American rule precludes recovery of attorney[s'] fees and costs in the absence of a contract or applicable statute in Wyoming.").

[53] *See* ECF No. 71, at 11.

[54] *See* ECF No. 62, ¶¶ 42–64.

**DISMISSED WITH PREJUDICE**. Defendant shall be awarded its attorneys' fees and costs from Plaintiff.

IT IS **SO ORDERED**.

Dated this 2ᵈ day of June, 2023.

Alan B. Johnson
United States District Judge